# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **FATOUMATA BANGOURA, et. al,** | : | **CIVIL ACTION** |
| *Plaintiffs,* | : | |
| | : | |
| **v.** | : | **No. 18-2274** |
| | : | |
| **JEFFERSON B. SESSIONS, III, et. al.,** | : | |
| *Defendants.* | : | |

### MEMORANDUM

## I.     INTRODUCTION

Before the Court is Defendants' Motion for Summary Judgment (ECF No.
5), Plaintiffs' Motion for Summary Judgment (ECF No. 7), and Defendants' Brief
in Further Support of their Motion for Summary Judgment and in Opposition to
Plaintiffs' Summary Judgment Motion (ECF No. 9).

## II.     BACKGROUND

This action arises out of the Board of Immigration Appeal's ("BIA")
dismissal of Plaintiffs' appeal of the U.S. Citizen and Immigration Services'
("USCIS") denial of Plaintiffs' Petition for Alien Relative.[1]

The following background is pursuant to the undisputed material record.  On
August 26, 2008, Plaintiff, Fatoumata Bangoura ("Bangoura"), filed a Non-
Immigrant Visa Application with the United States Consular Office in Conakry,

---

[1] The USCIS and BIA hereinafter will be collectively referred to as the "Government."

Guinea. ECF No. 5 at 3. Bangoura is a citizen of Guinea. *Id.* On her application, Bangoura listed her marital status as "married" and listed her spouse as Aboucacar Yalany Bangoura. *Id.* The purpose of Bangoura's trip to the United States was for "holiday." ECF No. 6 at tab 27.[2] On August 27, 2008, Bangoura's application was granted. ECF No. 5 at 4. On April 21, 2009, Bangoura married Plaintiff, Diafara[3] Drame ("Drame"), in Elkton, Maryland. *Id.* Drame is a naturalized United States citizen. *Id.*

### 1. First Green Card Application.

On February 6, 2011, Drame filed an I-130 Petition for Alien Relative on Bangoura's behalf (the "First Green Card Application"). *Id.* On the First Green Card Application, it was represented that Bangoura had no previous marriages. *Id.* The accompanying G-325A, Biographical Information, also does not identify any previous marriages for Bangoura. *Id.* On April 13, 2011, Plaintiffs appeared for an interview at the USCIS Philadelphia Office ("USCIS PHI") for their pending application. *Id.* During this interview, Bangoura testified that she was never previously married. *Id.*

On April 27, 2011, USCIS PHI issued a Notice of Intent to Deny ("NOID") for Plaintiffs' First Green Card Application. *Id.* According to the NOID:

---

[2] ECF No. 6 is the Certified Administrative Record, Volume I and II. It was filed as a hard copy, only.
[3] The Concise Statement of Stipulated Facts identifies Drame's given name as "Mamadou." However, the Certificate of Marriage identifies Drame's given name as "Diafara," which is consistent with the caption in this matter. *See* ECF No. 6 at tab 26.

2

[T]here is a significant discrepancy between [Drame's] testimony and what [Bangoura] told the consular officer in both, written and oral form. As of the date of this notice, there is no evidence in the file record to demonstrate that [Bangoura's] marriage to her first spouse was ever terminated, dissolved, or annulled. The record fails to establish that [Bangoura] was free to enter into the marriage upon which [Drame's] petition is based upon.

ECF No. 6 at tab 24. Moreover, USCIS PHI noted that Drame's marriage to Bangoura is "considered invalid at its inception because [Drame has] not demonstrated that [Bangoura] was free to marry [him]." *Id.*

On May 18, 2011, Andrea W. Clark, Esquire filed a response to the NOID on the Plaintiffs' behalf. *Id.* at tab 23. In this response, it was represented by the Plaintiffs that the information on Bangoura's previous Non-Immigrant Visa Application indicating that she was married, was "erroneous." *Id.*; ECF No. 5 at ¶9. Plaintiffs also submitted the following documentation to prove that Bangoura was single prior to her marriage to Drame:

1. Original Certificate of Celibacy from the Republic of Guinea, Civil status office dated May 6, 2011.

2. A parental authorization from the Ministry of Security and Civil Protection, Republic of Guinea (According to Plaintiffs, no parental authorization would be necessary for Bangoura to travel to the United States had she been married).

3

3. Authorization for Release of Territory signed by the superintendent of Police.

4. Bangoura's own notarized statement that she has never been married and has no children.

5. Letter from Bangoura's father that he has allowed Bangorua to travel outside the country.

ECF No. 6 at tab 23; ECF No. 5 at ¶9.

On July 13, 2011, USCIS PHI denied Plaintiffs' First Green Card

Application. ECF No. 5 at ¶10. USCIS PHI's denial covered the Plaintiffs'

submitted evidence very comprehensively and explained how each piece of

evidence failed to prove that Bangoura was free to marry Drame. ECF No. 6 at tab

22. Specifically, USCIS PHI's Field Office Director found that:

> The evidence failed to address the issue at hand, that being, [Bangoura's] prior claim on her visa application that she was married to Bangoura Aboubacar Yalany.
>
> Counsel's statements on [Bangoura's] behalf that "The information on her visa application was erroneous" is not sufficient to overcome the discrepancy that [Bangoura] was never previously married. The record does not demonstrate that this discrepancy was merely as a result of [Bangoura] checking an incorrect box of 'married,' instead of 'single' on the visa application. The record reflects that on her nonimmigrant visa application, signed and dated August 26, 2008, the beneficiary herself unequivocally stated that she was married, and represented the same before a United States consular official. She clearly set forth the name of her husband as Bangoura Aboubacar Yalany born on June 10, 1974. [Bangoura] further added that she has

4

three children. Accordingly, the specificity of the record does not support counsel's assertion that it was just an error. USCIS cannot now simply overlook [Bangoura's] prior statements regarding her marriage and attribute those past statements as a mistake.

The Certificate of Celibacy, notwithstanding the authenticity and the means of accuracy, might establish that [Bangoura] was never married or never had her married [sic] registered in Guinea; however, it does not preclude the possibility that she was married elsewhere, i.e., in a country other than Guinea.

The Parental Authorization from the Ministry of Security and Civil Protection, the letter pertaining to the Authorization for Release of Territory further fail to serve as persuasive evidence of [Bangoura's] 'single' status. These documents were all issued in the [sic] May 2011, and reference [Bangoura] as a 'child.' Accordingly [sic] to counsel, these documents somehow establish that [Bangoura] was never married, because she was required to obtain parental permission to depart Guinea, as she was a child. As the record stands, [Bangoura] was born on [ ] and applied for a non-immigrant visa on August 26, 2008, just short of turning [ ]. It is not clear, why [Bangoura], at the age of 32 years old, would [be] require[d] to have these documents issued at such a mature age. In the alternative, although counsel has not presented any evidence to support her aforementioned argument, these documents would have been issued to [Bangoura] when she departed Guinea in 2008 and not in May 2011.

The affidavit of [Bangoura's] father, dated May 6, 2011, consenting to the departure of his daughter from Guinea has no probative value either. It is not clear why this affidavit was drafted altogether, nearly three years after [Bangoura] departed Guinea in 2008, at the age of [ ].

Finally, [Bangoura's] affidavit attesting to have only been married one time to [Drame] also fails to overcome the discrepancies that are evident in the record. The general affidavit offers no insight and fails even to address why the information on her visa application is largely discrepant regarding her prior marriages and marital status. This issue was not addressed in the response to the [NOID].

5

Accordingly, as the petitioner, USCIS finds that [Drame has] not proven that [Bangoura] was free to marry and, consequently, [Drame] cannot confer an immigration benefit to her. [Drame has] failed to demonstrate that [Bangoura's] claims regarding her marital status on her visa application and before a consular officer of the United States Embassy in Conakry are less credible than her present claims.

ECF No. 6 at tab 22.

On August 3, 2011, Drame filed an appeal from the denial of the First Green Card Application. ECF No. 5 at ¶11. On August 26, 2011, Drame filed a Brief in Support of I-130 Appeal and Motion to Remand ("Appeal Brief").[4] *Id.* at ¶13. In the Appeal Brief, Bangoura admitted that "she signed the visa application which contained erroneous information." ECF No. 6 at tab 20, p. 4. The Appeal Brief also stated that Bangoura's "nonimmigration visa petition was not filled out by her, and although, she did sign same, she will acknowledge a misrepresentation to the overseas consulate." *Id.* at tab 20, p. 3. Plaintiffs maintained the argument that Bangoura was never previously married and does not have any children. *Id.* at tab 20, p. 4. In addition, the Appeal Brief also requested a waiver of inadmissibility pursuant to INA § 212(i).[5] *Id.* at tab 20, p. 5. The waiver of inadmissibility argument rested on the assertion that Drame "suffers from severe and chronic seizure disorder that renders him completely and totally incapable and unable to

---

[4] Drame asked that the Appeal Brief be treated as an appeal, or alternatively, as a motion to remand. *Id.* at ¶13.
[5] On August 9, 2011, Bangoura filed an I-601 Application for Waiver of Ground of Inadmissibility. ECF No. 5 at ¶12. However, according to the Certified Administrative Record (ECF No. 6), this Application was "Denied as Moot. I-484 denied." ECF No. 6 at tab 29.

care for himself." *Id.* According to the Appeal Brief, if Bangoura was not allowed to remain in the United States, [Drame] would suffer extreme and exceptional hardship because [Bangoura] is the only person that cares for him in this manner." *Id.* at tab 20, p. 6.

On June 28, 2012, the BIA affirmed the denial of Plaintiffs' First Green Card Application. ECF No. 5 at¶14. The BIA held that Drame "did not prove the validity of [his marriage to Bangoura] by a preponderance of the evidence." ECF No. 6 at tab 18, p. 1. In analyzing Plaintiffs' arguments in greater detail, the BIA found that:

Based on a previously filed application for non-immigrant visa (FORM DS-156) in which [Bangoura] claimed to be married to another man, we affirm the Director's determination that [Drame] did not establish that [Bangoura] was free to marry him as [Drame] did not establish that [Bangoura's] prior marriage was validly terminated at the time of the parties' marriage. . . .

In Response to the NOID [Drame] submitted various documents and affidavits to support his claim that [Bangoura] was not previously married. However, this evidence does not directly explain the discrepancy between [Bangoura's] claimed marital status as contained in the previously filed DS-156 and the information contained in the I-130 currently before us indicating that she was never previously married. We also acknowledge the statements made by [Drame's] attorney on appeal effectively conceding that [Bangoura] intentionally misrepresented her marital status on the DS-156 in order to gain an immigration benefit at the time [Footnote omitted]. However, [Bangoura] has not submitted an affidavit admitting to this fraudulent conduct. Therefore, the statements of [Drame's] attorney, untethered to an actual documented admission, such as an affidavit, would not

7

under these circumstances be considered evidence. . . . Nor would we consider such an admission of fraud as sufficient to resolve the concerns raised in the NOID regarding the legality of [Drame's] marriage to [Bangoura], much less resolve the questionable bona fides of this marriage. In sum, the evidence in the record regarding whether [Bangoura] is actually free to marry [Drame] is, even now, equivocal at best.

*Id.* at tab 18, p. 1-2.

## 2. Second Green Card Application.

On August 14, 2012, after the BIA issued its denial of their appeal, Plaintiffs filed a second I-130 Petition for Relative Alien ("Second Green Card Application") with USCIS Vermont Service Center ("USCIS VSC"), not USCIS PHI. ECF No. 5 at ¶¶15, 16. The Second Green Card Application listed no previous marriages for Bangoura. *Id.* On April 1, 2013, USCIS VSC issued a NOID for Plaintiffs' Second Green Card Application. *Id.* In this NOID, the same discrepancy between the earlier non-immigrant application which indicated that Bangoura was married to someone other than Drame and the current application which indicated that Bangoura was never previously married was a noted concern. *Id.* The NOID provided the Plaintiffs with two options. First, they could "[s]ubmit proof of the legal termination of the prior marriage of Fatoumata Bangoura." ECF No. 6 at tab 16, ex. G. Or, if Bangoura was not previously married, they could "submit documentary evidence to show that [Bangoura] was free to marry [Drame] at the time she applied for a non-immigrant visa on August 27, 2008." *Id.*

On April 16, 2013, Drame responded to the NOID. *Id.* at ¶17. In response to the NOID, Drame attached the following documents:

1. The previous documents that were submitted in regard to Plaintiffs' First Green Card Application.

2. A sworn statement by Bangoura that she had never previously married.

3. An Attestation of Authorization signed by Bangoura's father in May 2011, giving Bangoura permission to travel outside of Guinea.

4. An affidavit from Bangoura stating that she paid $2,000.00 to a man, also named Bangoura, to fill out the DS-156 application for a non-immigrant visa and had not seen him since she appeared at the consulate in Conakry, Guinea.

*Id.* On May 14, 2013, USCIS VSC denied Plaintiffs' Second Green Card Application. *Id.* at ¶18. After reviewing the procedural history, including Plaintiffs' First Green Card Application, the Acting Center Director for USCIS VSC laid out the evidence submitted by Drame in support of his application. In reviewing Bangoura's sworn statement regarding her $2,000.00 payment, USCIS VSC found that Bangoura:

[D]oes not explain why she signed the Form DS-156 that claims that she was married to Bangoura Aboubacar Yalany with three children and verbally attested to those facts at the consulate if she was single at the time she received her B2 non-immigrant visa. It is further noted, [Bangoura] does not claim her marriage and three children on her

9

immigration petitions and applications filed on her behalf after she arrived in the United States. [Bangoura's] statement does not prove that she had no prior marriages and is therefore free to marry [Drame].

ECF No. 6 at tab 16, p. 6-7. USCIS VSC's analysis regarding the Certificate of Celibacy was virtually identical to USCIS PHI's analysis. *Id.* at tab 16, p. 7. Upon reviewing the Parental Authorization from the Ministry of Security and Civil Protection, the Authorization for Release of Territory, and Bangoura's father's Attestation of Authorization, USCIS VSC found that:

The documents make reference to [Bangoura] as a child requiring parental permission to leave the country of Guinea, therefore indicating that [Bangoura] must be single. However, [Bangoura] was born in [ ] and was an adult nearing the age of [ ] of age [sic] when she entered the United States. It is not clear why [Bangoura] as an adult would require parental permission to travel. It is further noted, the The [sic] Parental Authorization from Ministry of Security and Civil Protection, the Authorization for Release of Territory, and the Attestation of Authorization were issued in 2011, three years after [Bangoura] travelled to the United States. There is no explanation of why these documents were issued three years after [Bangoura] travelled out of the country of Guinea. These civil documents do not show that [Bangoura] was never married.

*Id.* After reviewing all the submitted documents, USCIS VSC found that the evidence did not demonstrate that Bangoura was free to marry Drame because the record did not contain evidence that demonstrated that Bangoura's marriage to Bangoura Abouacar Yalany had been terminated. *Id.*

10

On June 11, 2013, the denial of Plaintiffs' Second Green Card Application was appealed to the BIA. ECF No. 5 at ¶19. On October 1, 2015, the BIA affirmed the denial. *Id.* The BIA, in its opinion, agreed with USCIS VSC that Drame "did not provide sufficient documentary evidence in response to the NOID to substitute [Bangoura's] assertion that she was never married." ECF No. 6 at tab 14, p. 3-4. The BIA allowed Drame the opportunity to file a new visa petition on Bangoura's behalf. *Id.* at tab 6, p. 4.

### 3. Third Green Card Application.

On April 28, 2016, Plaintiffs filed a third I-130 Petition for Alien Relative ("Third Green Card Application") with USCIS PHI. [6] ECF No. 5 at ¶21. Plaintiffs' Third Green Card Application included an affidavit from Bangoura, dated February 16, 2016, that she had lied to the consular officer in Guinea when she represented to him that she was married and had three children. *Id.* Specifically, Bangoura lied because she was informed that it would increase her chances of coming to the United States. ECF No. 6 at tab 12, p. 9. The Third Green Card Application also included a polygraph report finding that Bangoura

---

[6] The following is the substantive documents submitted for Plaintiffs' Third Green Card Application: (1) Form G-325a *Biographic Information* for Drame; (2) Form G-325a *Biographic Information* for Bangoura; (3) copy of the marriage certificate for Drame and Bangoura; (4) copy of Drame's divorce decree; (5) copy of Drame's naturalization certificate; (6) copy of Bangoura's visa entry along with entry stamp; (7) affidavit from Bangoura stating that she gave false information to an immigration officer to obtain a non-immigrant visa to enter the United States; (8) polygraph report performed on Bangoura; (9) copy of Drame and Bangoura's direct deposit form showing that they share the same bank account; (10) letter from William A. Schmidt attesting to the bona fide marriage between Drame and Bangoura; and (11) photographs between Drame and Bangoura at Drame's hardware shop. ECF No. 6 at tab 13.

was not lying when she claimed that she had never been previously married. ECF

No. 5 at ¶21. On April 12, 2017, USCIS PHI issued a Request for Evidence,

seeking evidence that proves that Plaintiffs have/had a valid marriage, and it was

not entered into for immigration purposes. *Id.* at ¶22. On May 30, 2017, Drame

submitted various documents to show that their marriage was bona fide. *Id.* at ¶23.

The documents submitted by Drame were:

1. Recording List and Deed confirming that Drame added Bangoura to the
   deed on the home that Drame had previously purchased.

2. Medical records from Bangoura, with current address.

3. Utility bills for the Plaintiffs.

4. Letter from Jarfara Samasa, Director of Masjid Tawbah, Plaintiffs'
   mosque.

5. Letter from Daniel F. Bigle, friend of Plaintiffs'.

6. Photos of the Plaintiffs at Drame's hardware shop.

ECF No. 6 at tab 9, p. 1.

On June 16, 2017, USCIS PHI issued a NOID. ECF No. 5 at ¶24. In the

NOID, USCIS PHI stated that:

> The evidence indicates, and USCIS believes, that [Bangoura's]
> marriage to Bangoura Aboubacar Yalany has never been legally
> terminated, dissolved, or annulled. As you [Drame] have not provided
> evidence that [Bangoura] was legally free to marry you, your marriage
> appears to be a bigamous marriage that is contrary to public policy. . . .

12

Further, [Bangoura] has not been able to clearly demonstrate to the service that [her] previous marriage never took place with evidence.

ECF No. 6 at tab 8, p. 2. On July 17, 2017, Plaintiffs' new attorney wrote a letter in response to the NOID. *Id.* at tab 7; ECF No. 5 at ¶25. In his letter to USCIS PHI, Plaintiffs' attorney wrote, in relevant part, "[i]t should be noted that Mrs. Bangoura was never married to Bangoura Aboubacar Yalany. Mrs. Bangoura has consistently been forthcoming with USCIS that she misrepresented her marital status to Mr. Yalany in order to obtain a nonimmigrant visa." *Id.* at tab 7, p. 1-2.

On July 26, 2017, USCIS PHI denied Plaintiffs' Third Green Card Application. ECF No. 5 at ¶26. In analyzing the polygraph report, USCIS PHI found that:

When an individual undergoes a polygraph test, they do not necessarily tell the examiner whether the subject is telling the truth or lying but indicates a lie based on the physiological reactions to the questions asked. The examiner can be swayed by the individual's physiology or the examiner could be bias. Further, the individual can manipulate the results by controlling their physical reactions which makes for a less reliable result. An honest person may be nervous when answering truthfully and a dishonest person may be non-anxious. Consequently, the polygraph report that was submitted is not compelling since polygraph tests fail to serve as reliable evidence as to [Bangoura's] marital status.

ECF No. 6 at tab 6, p. 2. Regarding Bangoura's sworn statement that she intentionally lied about being married in order to increase her chances of acquiring a visa, USCIS PHI found that the sworn statement "is not deemed compelling by

13

the USCIS. It is a self-serving statement and does not prove that she had no prior marriage and is therefore free to marry [Drame]." *Id.* USCIS PHI concluded that Drame's marriage to Bangoura "is considered invalid at its inception because [Drame had] not demonstrated that [Bangoura] was free to marry [him]. [Drame had] not presented evidence that [Bangoura's] prior marriage was terminated" and Plaintiffs failed to demonstrate that they are legally married for immigration purposes. *Id.*

On August 22, 2017, Plaintiffs appealed the denial of their Third Green Card Application. ECF No. 5 at ¶27. On September 18, 2017, the BIA received a Brief in Support of Plaintiffs' Appeal. ECF No. 6 at tab 4. In this Brief, Plaintiffs argued that USCIS PHI's characterization of Bangoura's sworn statement as a self-serving statement was a mischaracterization because the statement was against Bangoura's interest because it required her to file an I-601 waiver should her Third Green Card Application be granted. *Id.* at tab 4, p. 5. Plaintiffs also argued that USCIS PHI improperly discredited the polygraph report because the examiner was highly qualified and polygraph tests are "deemed reliable by the FBI and US Army in both criminal investigations and sensitive foreign counterintelligence examination." *Id.* Therefore, according to Plaintiffs, polygraph tests should also be considered reliable to USCIS in administrative proceedings. *Id.* On October 10, 2017, USCIS wrote a Reply Brief responding to Plaintiffs' Brief. *Id.* at tab 3.

On November 7, 2017, the BIA received Plaintiffs' Response Brief in Support of

Appeal. *Id.* at tab 2. In their Response Brief, Plaintiffs noted that USCIS did not

produce any evidence in support of its claim that Bangoura is not legally free to

marry Drame. *Id.* at tab 2, p. 3. Second, Plaintiffs argued that USCIS's actions

must be in logic and common sense and USCIS's position that it is at Bangoura's

advantage to state that she was never married goes against logic and common

sense. *Id.* Third, Plaintiffs argued that USCIS's reliance on judicial standards of

evidence regarding polygraph examinations is arbitrary and capricious because the

applicable evidentiary standard is not as strict as the judicial standards. *Id.* at tab 2,

p. 4. Finally, Plaintiffs argued that USCIS's rejection of the polygraph

examination conflicts with the practices of the Department of Homeland Security

("DHS") because DHS requires polygraph testing for potential employees. *Id.* at

tab 2, p. 4-5.

On March 7, 2018, the BIA affirmed Plaintiffs' Third Green Card

Application denial. ECF No. 5 at ¶28. In its opinion, the BIA noted that the

burden of proof is on the Plaintiffs to establish the claimed relationship and must

demonstrate that Bangoura was never married or that her previous marriage was

terminated prior to her marriage to Drame. ECF No. 6 at tab 1, p. 4. The BIA

found that Bangoura's sworn statement that she lied in order to increase her

chances of obtaining a visa is not "sufficient to resolve the concerns raised in the

15

NOID regarding the legality of [Drame's] marriage to [Bangoura]." *Id.* In addressing the polygraph evidence, the BIA was also unpersuaded that this evidence is sufficiently reliable. *Id.* In support of this finding, the BIA cited *Goel v. Gonzales*, 490 F.3d 735, 738-39 (9th Cir. 2007). *Id.* The BIA also stated "[w]e acknowledge [Drame's] arguments regarding the difficulty in proving the absence of a marriage. However, [Drame] bears the burden by a preponderance of the evidence to show that [Bangoura] was legally able to marry him." *Id.*

This action followed the BIA's dismissal of Plaintiffs' third appeal.

### 4. Parties' Motions for Summary Judgment.

Plaintiffs filed their Complaint against Defendants on May 31, 2018. Plaintiffs' Complaint alleges three (3) Counts against the Defendants. ECF No. 1. Count I alleges "APA Violation: Arbitrary and Capricious Agency Action in Violation of Precedential Case Law (Agencies' Repeated Failure to Properly Employ 'Preponderance of Evidence Standard of Review')." *Id.* at 7. Count II alleges "APA Violations/Due Process Violation: Arbitrary and Capricious Agency Action (Improper and Unfounded Rejection of Polygraph Evidence)." *Id.* at 10. Count III alleges "Fifth Amendment Due Process Violation: Impermissible Interference with Right of US Citizen to Marry." *Id.* at 15. On August 15, 2018, Defendants filed their Motion for Summary Judgment. On September 21, 2018,

16

Plaintiffs filed their Motion for Summary Judgment.[7] On August 27, 2018,

Defendants filed their Brief in Further Support of Their Summary Judgment

Motion and in Opposition to Plaintiffs' Summary Judgment Motion. On January

8, 2019, the Court heard oral argument on the parties' motions for summary

judgment.

## III. DISCUSSION

### 1. Standard of Review.

Pursuant to the Immigration and Nationality Act ("INA"), a United States

citizen husband may petition the USCIS to have his non-citizen wife obtain an

immigration visa because of their status as a married couple. 8 U.S.C. § 1151

(b)(2)(A)(i). The petitioner bears the burden of proof in establishing the eligibility

for the benefit sought. *Matter of Brantigan*, 11 I. & N. Dec. 493, 495 (BIA 1966).

In addition, the USCIS uses a preponderance of the evidence standard[8] in

determining whether the petitioner has met his burden. *Matter of Soo Hoo*, 11 I. &

N. Dec. 151, 152 (BIA 1965). Under the Administrative Procedure Act ("APA"),

a district court must determine whether the USCIS's decision to deny an

immigration visa (green card application) was "arbitrary, capricious, an abuse of

---

[7] Plaintiff's Motion for Summary Judgment also acted as a Response to Defendants' Motion for Summary Judgment.

[8] The preponderance of the evidence standard "requires the trier of fact to believe that the existence of a fact is more probable than its nonexistence." *Syblis v. Attorney General of the U.S.*, 763 F.3d 348, 357 (3d Cir. 2014) (internal quotations omitted) (quoting *Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Trust for S. Cal.*, 508 U.S. 602, 622, 113 S. Ct. 2264, 124 L. Ed. 2d 539 (1993)).

17

discretion, or otherwise not in accordance with law." *Motor Vehicle Manufacturers Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 41, 103 S. Ct. 2856, 77 L. Ed. 2d 443 (1983) (internal quotations omitted) (quoting 5 U.S.C. § 706(2)(A)).

"While summary judgment is the proper mechanism for deciding, as a matter of law, whether an agency's action is supported by the administrative record and consistent with the APA standard of review . . . the usual summary judgment standard does not apply." *Dorley v. Cardinale*, 119 F. Supp. 3d 345, 351 (E.D. Pa. 2015). Unless there are extenuating circumstances, there are no material facts in dispute because "judicial review of [an] administrative action is limited to the administrative record." *NVE, Inc. v. Department of Health and Human Services*, 436 F.3d 182, 190 (3d Cir. 2006). "To determine whether an agency has acted arbitrarily or abused its discretion, the reviewing court 'must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.'" *Donovan v. Adams Steel Erection, Inc.*, 766 F.2d 804, 807 (3d Cir. 1985) (quoting *Citizen to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416, 91 S. Ct. 814, 28 L. Ed. 2d 136 (1971)).

2. Bangoura's Marital Status as a Basis for Denial.

Upon review of Plaintiffs' Third Green Card Application, the USCIS and the BIA (collectively the "Government") cited the discrepancy between Bangoura's

18

representation on her non-immigrant visa petition that she was married and Bangoura's later representation that she was never previously married. The Government cited the lack of credible evidence to prove that either Bangoura was never previously married prior to Drame or that she legally terminated the previous marriage that she attested to on her non-immigrant visa form. After a review of the administrative record, the Court does not find anything arbitrary or capricious about the decision to deny Plaintiffs' Third Green Card Application.

The crux of the issue boils down to whether Plaintiffs submitted enough credible evidence to overcome their burden that either 1) Bangoura was never previously married; or 2) Bangoura legally terminated her previous marriage. Plaintiffs argue that logic and common sense demonstrate that Bangoura was clearly lying on her non-immigrant visa application when she represented that she was married and had three (3) children. ECF No. 7 at 5-11. Because Bangoura was lying about her previous marriage, Plaintiffs argue that the Government cannot continue to deny their green card applications because it is impossible to provide evidence on a marriage that never happened. *Id.* Because of this, Plaintiffs contend that the Government has forced them into the untenable position of "proving a negative without the aid of reliable documents." *Id.* at 8.

However, Plaintiffs' argument fails to address a major concern held by the Government, that is, without credible evidence to support Bangoura's statement

19

that she lied about being previously married, it is difficult to now believe someone at face value who has previously admitted to lying. In other words, without the additional, credible evidence, there is no definitive proof the Government can rely on to conclude that Bangoura is truthfully admitting that she previously lied. Furthermore, the Plaintiffs' argument that if Bangoura was in fact previously married, all she would have to do is obtain a divorce and remarry Drame, does not advance their position. This argument does not dull the Government's concern that Bangoura may be currently married to Bangoura Aboubacar Yalany and is marrying Drame for immigration purposes, only. In fact, Plaintiffs' position put the Government in a precarious situation. Either they believe Bangoura's statement without credible corroborative evidence or they discredit Bangoura's statement because of the lack of credible corroborative evidence. The Government choosing the later position is not arbitrary and capricious.[9]

Arguably, the most compelling evidence Plaintiffs submitted was the polygraph examination. However, Plaintiffs' submission of the polygraph examination as evidence does not make the Government's denial arbitrary and capricious. First, the polygraph evidence is not the absolute be all for potential evidence corroborating Bangoura's statement that she lied. Even if the

---

[9] Critical evidence that is lacking from the record includes a sworn statement from Bangoura Aboubacar Yalany corroborating Bangoura's statement that they were never married. Even though, based on the allegations from Plaintiffs, this evidence would be difficult to obtain, Plaintiffs still bear the burden of proof.

20

Government did not discredit the polygraph evidence, the decision to deny could still have been warranted based on the totality of the evidence and the circumstances.[10] Unlike the position held by the Plaintiffs, the Government's decision to deny Plaintiffs' Third Green Card Application does not turn on whether the polygraph examination is viewed as credible.

Second, separate and apart from the above paragraph, the Government's decision to discredit the polygraph examination as evidence was also not arbitrary and capricious. Under the umbrella of the Third Circuit, the general rule is that polygraph tests "are not admissible in federal court to prove that the party who submitted to the polygraph told the truth." *Foster v. Township of Hillside*, 780 F. Supp. 1026, 1041 (D.N.J. 1992) (reviewing a Title VII sexual harassment claim), *aff'd Foster v. Hillside Police Dept.*, 977 F.2d 567 (3d Cir. 1992). Similarly, other circuits have also found polygraph evidence to be untrustworthy. *See e.g., Acosta v. Lynch*, 819 F.3d 519, 526 (1st Cir. 2016) (finding that immigration judge did not err in declining to give plaintiff's favorable polygraph examination any significance when weighing the evidence); *U.S. v. Alvirez*, 831 F.3d 1115, 1125 (9th Cir. 2016) ("In this circuit, it is well-established that a polygraph examination

_____

[10] Although not before the Court, the Court notes that if the Government found Bangoura to be telling the truth that she was never previously married because of the polygraph examination, the Government may have still decided to deny the Third Green Card Application. This is because under 8 U.S.C. 1182(a)(C)(i), "[a]ny alien who, by fraud or willfully misrepresenting a material fact, seeks to procure (or has sought to procure or has procured) a visa, other documentation, or admission into the United States or other benefit provided under this chapter is inadmissible." Therefore, the Government's decision-making process may have differed had the polygraph examination been deemed credible, but the same outcome, i.e., denial may have resulted.

21

may not be admitted to prove the veracity of statements made during the examination."); *U.S. v. Sherlin*, 67 F.3d 1208, 1217 (6th Cir. 1995) ("[U]nilaterally obtained polygraph evidence is almost never admissible under Evidence Rule 403." (quoting *Conti v. Commissioner*, 39 F.3d 658, 663 (6th Cir. 1994))). Even though the standard before the Government in immigration proceedings, such as the instant matter, is not identical to the standard used by courts for deciding what evidence should be admitted, the Government, here, still objectively reviewed the polygraph evidence and, based on the overall facts of this case and in light of the fact that courts are reluctant to admit polygraph evidence, found Bangoura's polygraph examination as unreliable. There is nothing to suggest that was an arbitrary and capricious decision.

Finally, simply because a different outcome could have been reached is not enough for the Court to find that the Government's decision was arbitrary and capricious. *See Smith v. FedEx Freight East, Inc.*, 2010 WL 456779, at *6 (M.D. Pa. Feb. 1, 2010) ("Upon review of the administrative record, we find that Hartford's decision to deny Plaintiff LTD benefits was not arbitrary and capricious. Granted, the Court is aware the [sic] a different outcome *could* have been reached. Nonetheless, the record does not establish that the outcome was reached without reason, erroneous, or unsupported by the evidence." (emphasis in original)). Therefore, even though Bangoura submitted evidence in an attempt to

22

substantiate her statement that she lied, this evidence, for legitimate reasons identified by the Government, was not credible. Accordingly, the denial of Plaintiffs' Third Green Card Application was not arbitrary and capricious.

### 3. Plaintiffs' Alleged Constitutional Injury.

Lastly, Plaintiffs allege that Drame, as a United States citizen, has a tangible liberty interest in his marriage and this right entails the right to live with his spouse in security in the United States. Specifically, Plaintiffs allege that the Government has placed Drame in a position in which he will never be able to enjoy his marriage with Bangoura and this is an unlawful interference with Drame's protected interest in his right to marriage with Bangoura by the Government. *See* ECF No. 7 at 15-16. The Court first notes that there is clearly no procedural due process violation here. Plaintiffs went through three (3) separate green card applications, submitted copious amounts of documents, were given numerous opportunities to present their case and evidence, and the evidence was ultimately reviewed by decision-making bodies on six (6) occasions.

With respect to Plaintiffs' argument that Drame holds a protected interest to enjoy his marriage with Bangoura in the United States, the Court finds that no such protected liberty interest exists. The Third Circuit recently stated that "cognizant of Congress's plenary authority to set the conditions for an alien's entry into the United States . . . no court has recognized that a citizen spouse has a constitutional

23

right to have his or her alien spouse reside in the United States." *Bakran v.*

*Secretary, United States Department of Homeland Security*, 894 F.3d 557, 565 (3d

Cir. 2018) (internal citations omitted). Here, because Plaintiffs' Constitutional

claim, in essence, alleges that Drame has a fundamental right to live in the United

States with his spouse, Bangoura, the Court will follow the Third Circuit's

direction in *Bakran*. Accordingly, the Court finds that Plaintiffs were not deprived

due process and equal protection of the law when the Government denied their

Third Green Card Application.

## IV.  CONCLUSION

For the reasons set forth above, the Court grants Defendants' Motion for

Summary Judgment and denies Plaintiffs' Motion for Summary Judgment.

Accordingly, Plaintiffs' claims are dismissed with prejudice. An appropriate order

will follow this Memorandum.

**BY THE COURT:**

DATED: 1-28-2019

CHAD F. KENNEY, JUDGE